Filed 3/29/22  In re I.M. CA5

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re I.M. et al., Persons Coming Under the Juvenile Court Law. | |
| STANISLAUS COUNTY COMMUNITY SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>M.M.,<br><br>Defendant and Appellant. | F083432<br><br>(Super. Ct. Nos. JVDP-19-000246, JVDP-19-000247, JVDP-19-000248)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from an order of the Superior Court of Stanislaus County.  Ann Q. Ameral, Judge.

Karen J. Dodd, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Boze, County Counsel, and Angela Cobb, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Levy, Acting P. J., Poochigian, J. and Smith, J.

Appellant M.M. (mother) is the mother of I.M., Mo.M., and Mi.M. (the children), who are the subjects of a dependency case. Mother challenges the juvenile court's orders terminating her parental rights at a Welfare and Institutions Code[1] section 366.26 hearing. Mother's sole claim is that the juvenile court and the Stanislaus County Community Services Agency (agency) failed to comply with the inquiry provisions of the Indian Child Welfare Act of 1978 (25 U.S.C., § 1901 et seq. (ICWA)). We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Since mother does not challenge the juvenile court's jurisdictional finding, dispositional ruling, or findings supporting its decision to select adoption as the permanent plan and terminate parental rights, a detailed summary of the evidence supporting these rulings is unnecessary.

On September 30, 2019, the children were taken into protective custody as a result of mother's substance abuse, domestic violence, mental illness, and failure to comply with voluntary family maintenance services. The voluntary services plan involved mother living with the children in the home of the maternal grandparents, but mother failed to comply with various components of this plan. The agency served a protective custody warrant on mother after it was determined the maternal grandparents were unable to protect the children from mother and the alleged father of Mo.M. and Mi.M., Jesus M.

The agency filed a petition alleging all three children were at substantial risk of serious physical harm under section 300, subdivision (b), and I.M. under section 300, subdivision (g). The report prepared for the detention hearing indicated that an inquiry of Indian ancestry had not yet been completed. At a detention hearing held October 3, 2019, mother and Jesus M., appeared and were appointed counsel. The presumed father of I.M., Everardo M., was reported to be residing in Mexico. The juvenile court found that

---

[1]     All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

2.

Everardo M. was also the presumed father of Mo.M. and Mi.M. as a result of a still existing marriage.

A social worker provided the juvenile court with parental notification of Indian status forms (ICWA-020) signed by the parents, which indicated no known Indian ancestry. The juvenile court then directly inquired of mother and Jesus M. regarding possible Indian ancestry after reviewing the forms submitted by the agency. Each parent denied having any Indian ancestry, and the juvenile court found that it had no reason to believe that ICWA applied. The juvenile court ordered the children detained from their parents and set a combined jurisdiction and disposition hearing for November 7, 2019.

The juvenile court appointed Everardo M. an attorney after he was located in Mexico by the agency. At a hearing on October 17, 2019, the juvenile court found ICWA was not applicable as to Everardo M. after an ICWA-020 form denying any Indian ancestry was filed on his behalf. Each of the children's fathers were born in Mexico, but Everardo M. had to return in 2009 because he was unable to obtain asylum. The children were initially placed in homes with maternal uncles and were later moved to the home of the maternal grandparents.

After multiple continuances for coordination with the Mexican consulate and disruption from the COVID-19 pandemic, a contested jurisdiction and disposition hearing was held on June 1, 2020. The juvenile court found allegations (b-1) through (b-10) of the petition true, found ICWA not applicable, and ordered reunification services for mother and both fathers.

Family reunification services were ordered to continue for all parents at the six-month review hearing on November 19, 2020. The report prepared for the 12-month review hearing recommended that reunification services be terminated for all parents due to a lack of progress and compliance in the parents' case plans. The children remained placed in the home of their maternal grandparents, who were willing to adopt the children. A contested 12-month review hearing was held on March 11, 2021, where the

3.

juvenile court terminated services to mother and both fathers and set a section 366.26 hearing for July 9, 2021.

The agency prepared a report for the section 366.26 hearing recommending termination of parental rights and establishment of a plan of adoption for all three children. The children remained placed with their maternal grandparents, who had been providing care for more than a year and wanted to adopt the children. The report indicated that ICWA did not apply without any additional information. On August 26, 2021, mother and Jesus M. testified that they were not in agreement with the agency's recommendation, and they described the children's enjoyment of their respective visits. The juvenile court found the children adoptable without any applicable exceptions, and it proceeded to terminate parental rights for all three children. Mother filed a timely notice of appeal on October 12, 2021.

## DISCUSSION

Mother contends the juvenile court's finding that ICWA did not apply was not supported by sufficient evidence because the record does not include interviews conducted by the agency with mother and maternal family members regarding Indian ancestry. Mother argues that despite her own denial of Indian ancestry at the detention hearing, the agency had a duty to separately inquire of mother and maternal relatives regarding any potential Native American ancestry.

### A.    *Legal Principles*

ICWA reflects a congressional determination to protect Indian children and to promote the stability and security of Indian tribes and families by establishing minimum federal standards that a state court, except in emergencies, must follow before removing an Indian child from his or her family. (25 U.S.C., § 1902; see *In re Isaiah W.* (2016) 1 Cal.5th 1, 7–8.) In any "proceeding for the foster care placement of, or termination of parental rights to, an Indian child, the Indian custodian of the child and the Indian child's tribe … have a right to intervene" (25 U.S.C., § 1911(c)), and may petition the court to

4.

invalidate any foster care placement of an Indian child made in violation of ICWA (25 U.S.C., § 1914; see § 224.2, subd. (e)).  An "Indian child" is defined in ICWA as an unmarried individual under 18 years of age who is either (1) a member of a federally recognized Indian tribe, or (2) is eligible for membership in a federally recognized tribe and is the biological child of a member of a federally recognized tribe.  (25 U.S.C., § 1903(4) & (8); see § 224.1, subd. (a) [adopting federal definitions].)

In every dependency proceeding, the agency and the juvenile court have an "affirmative and continuing duty to inquire whether a child is or may be an Indian child ...."  (Cal. Rules of Court, rule 5.481(a); see also § 224.2, subd. (a); *In re W.B.* (2012) 55 Cal.4th 30, 53; *In re Gabriel G.* (2012) 206 Cal.App.4th 1160, 1165.)  The continuing duty to inquire whether a child is or may be an Indian child "can be divided into three phases:  the initial duty to inquire, the duty of further inquiry, and the duty to provide formal [ICWA] notice."  (*In re D.F.* (2020) 55 Cal.App.5th 558, 566.)

The initial duty to inquire arises at the referral stage when the reporting party is asked whether it has "any information that the child may be an Indian child."  (§ 224.2, subd. (a).)  Once a child is received into temporary custody, the initial duty to inquire includes asking the child, parents, legal guardian, extended family members, and others who have an interest in the child whether the child is, or may be, an Indian child. (§ 224.2, subd. (b); § 306, subd. (b).)  The juvenile court has a duty at the first appearance of each parent to ask whether he or she "knows or has reason to know that the child is an Indian child."  (§ 224.2, subd. (c).)  The court must also require each parent to complete an ICWA-020 form.  (Cal. Rules of Court, rule 5.481(a)(2)(C).)

**B.**    *Standard of Review*

A juvenile court's finding that ICWA is inapplicable is reviewed under the substantial evidence standard.  (*In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1430 (*Rebecca R.*).)  Thus, we must uphold the juvenile court's orders and findings if any substantial evidence, contradicted or uncontradicted, supports them, and we must indulge

5.

all legitimate inferences in favor of affirmance. (*In re John V.* (1992) 5 Cal.App.4th 1201, 1212.)

### C. *Analysis*

In the present case, an agency social worker submitted mother's signed ICWA-020 form to the juvenile court at the detention hearing. Afterwards, the juvenile court directly inquired with mother as to whether she had any Indian ancestry. Mother denied having any Indian ancestry both expressly to the juvenile court and in the ICWA-020 form that she provided to the social worker prior to the hearing. Despite these facts, mother now suggests that the initial inquiry was inadequate absent specific documentation that the agency separately inquired of potential Indian ancestry with mother.

We reject this claim and agree with the agency that a reasonable inference can be made that the social worker discussed potential Indian ancestry with the parents prior to their completion of the ICWA-020 forms that were in the agency's possession at the detention hearing. (See *In re Charlotte V.* (2016) 6 Cal.App.5th 51, 57 [" ' "On review of the sufficiency of the evidence, we presume in favor of the order, considering the evidence in the light most favorable to the prevailing party, giving the prevailing party the benefit of every reasonable inference and resolving all conflicts in support of the order." ' "].)

Next, there is no evidence in the record detailing conversations the agency had with maternal grandparents, who were living with the children at the time of their placement into protective custody, regarding potential Indian ancestry to satisfy its duty of initial inquiry under section 224.2, subdivision (b). The agency does not argue otherwise, it only contends that any such error was not prejudicial. Even were we to find inadequate inquiry based upon the lack of documented conversations with mother and her extended family regarding Indian ancestry, we find no prejudicial error.

"Where the record below fails to demonstrate and the parents have made no offer of proof or other affirmative assertion of Indian heritage on appeal, a miscarriage of

6.

justice has not been established and reversal is not required." (*In re Noreen G.* (2010) 181 Cal.App.4th 1359, 1388; see also *In re N.E.* (2008) 160 Cal.App.4th 766, 769–711 [failure to ask father whether he had Indian ancestry was harmless where father "does not assert on appeal that he in fact has any Indian heritage"]; *Rebecca R.*, *supra*, 143 Cal.App.4th at pp. 1430–1431 [asserted failure to ask father whether he had Indian ancestry was harmless where father did not "make an affirmative representation of Indian heritage" on appeal].)

"In the absence of such a representation, the matter amounts to nothing more than trifling with the courts. [Citation.] The knowledge of any Indian connection is a matter wholly within the appealing parent's knowledge and disclosure is a matter entirely within the parent's present control. The ICWA is not a 'get out of jail free' card dealt to parents of non-Indian children, allowing them to avoid a termination order by withholding secret knowledge, keeping an extra ace up their sleeves. Parents cannot spring the matter for the first time on appeal without at least showing their hands." (*Rebecca R.*, *supra*, 143 Cal.App.4th at p. 1431.) In the absence of an affirmative representation, "there can be no prejudice and no miscarriage of justice requiring reversal." (*Ibid.*)

In support of her claim of prejudicial error, mother cites to *In re Y.W.* (2021) 70 Cal.App.5th 542, 554. The case of *In re Y.W.* involved a mother who was adopted at the age of two by unrelated adoptive parents, from whom she was estranged, and who had no contact with her biological parents. Our present facts are readily distinguishable given the fact that mother was not estranged from her biological parents, whom she resided with prior to removal. Therefore, we reject mother's "unvarnished contention that additional interviews of [maternal grandparents] would have meaningfully elucidated the children's Indian ancestry."[2] (*In re Darian R.* (2022) 75 Cal.App.5th 502; see also *In re*

___

[2]     We are also aware of the recently published case of *In re A.C.*, (Mar. 4, 2022, B312391) ___ Cal.App.5th ___, which is distinguishable on its facts for similar reasons as in *In re Y.W.*

*S.S.* (Feb. 24, 2022, B314043) ___ Cal.App.5th ___ [failure to interview maternal grandmother was not prejudicial where maternal grandmother requested placement of the dependent child in her care but never revealed any Indian ancestry throughout the dependency proceedings, despite having every incentive to do so].)

We acknowledge some courts have declined to impose too heavy a burden on the parent to show prejudice when the record is inadequate because of the child welfare agency's failure to document its inquiries. (See *In re K.R.* (2018) 20 Cal.App.5th 701, 708; see also *In re N.G.* (2018) 27 Cal.App.5th 474, 483.) However, unlike the present case, both *In re K.R.* and *In re N.G.* involved an appealing parent who was at least claiming the child might have Indian ancestry.

Mother's reliance upon *In re Benjamin M.* (2021) 70 Cal.App.5th 735 in urging us to remand is similarly unpersuasive. In *In re Benjamin M.*, one parent was not available to report or deny Indian heritage and the agency never inquired of any of the missing parent's available relatives. (*Id*. at pp. 744–745.) Here, mother lived with the relatives that she claimed the agency failed to interview, which differs significantly from *In re Benjamin M.*, where the mother was challenging the child welfare agency's failure to interview a paternal relative whom the mother may not have known.

Finally, we find our decision in *In re J.N.* (2006) 138 Cal.App.4th 450, distinguishable. In *In re J.N.*, the parent was never asked whether she had any Indian ancestry and the record contained no information to that effect. (*Id*. at p. 461 & fn. 6.) In those circumstances, we rejected harmless error analysis, "refus[ing] to speculate" about what the parent's response to an inquiry might be. (*Id*. at p. 461.) Moreover, we did not say that a harmless error analysis may never be employed when an inquiry is not made. Here, however, inquiry was made of mother; she was asked about Indian ancestry by the juvenile court and by virtue of the agency providing her the ICWA-020 form to complete. Mother does not claim that either she, the children, or any of her maternal relatives has

any information that mother had Indian ancestry, and the record suggests that she does not, which provides a nonspeculative basis for a harmless error determination.

Mother gives us no basis for concluding that, if the matter were remanded to the juvenile court, she or her relatives would claim that they have Indian ancestry. A remand for inquiry would be an empty formality, a waste of judicial resources, and detrimental to the children's interests in stability. (*Rebecca R.*, *supra*, 143 Cal.App.4th at p. 1431 ["Parents unable to reunify with their children have already caused the children serious harm; the rules do not permit them to cause additional unwarranted delay and hardship, without any showing whatsoever that the interests protected by the ICWA are implicated in any way."].) Accordingly, mother's claim that the termination order should be conditionally reversed is without merit.

## DISPOSITION

The order appealed from is affirmed.